IN THE
# UNITED STATES DISTRICT COURT
FOR THE
# NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

| | |
|---|---|
| **David Turner**, **Quanellia Turner**, **Izear Farmer, Jr.**, by and through their natural mother and next friend, **Joyce Turner**, individually and **Izear Farmer, Sr.**, individually | PLAINTIFFS |
| *versus* | N° **2:06-CV-0098-SAA** |
| **North Panola School District** and **John Does 1-10** | DEFENDANTS |

## MEMORANDUM OPINION

This is a case about school children and a school bus. The minor Plaintiffs David Turner, Quanellia Turner, and Izear Farmer, Jr. were students in the North Panola School District ("North Panola") during the 2004-05 school year. They, along with their parents, Joyce Turner and Izear Farmer, Sr.,[1] allege that North Panola violated the children's federal constitutional rights and committed various state law torts.

Under 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge to dispose of any or all of the plaintiffs' claims. Accordingly, a jury trial was conducted on August 6-7, 2007 on the federal constitutional claims. As North Panola, a government entity under Mississippi law, benefits from the protections of the Mississippi Tort Claims Act, MISS. CODE ANN. §§ 11-46-1 to -23 (West 2007), the various state law tort claims are reserved solely for the court. *See* MISS. CODE ANN. § 11-46-13(1) (mandating bench trials for claims under the Tort

---

[1] Izear Farmer, Sr. is the natural father of Izear Farmer, Jr. only.

1

Claims Act).

Having received the proof from the parties, the court finds on the plaintiffs' state law tort claims as follows:

## I. FACTUAL BACKGROUND

During the 2004-05 school year, David, Quanellia, and Izear, Jr. all rode North Panola school bus #972, driven by Ms. Barbara Webster. During that school year, Ms. Webster began suspending David and Quanellia from the bus for their allegedly offensive body odor. At the time, North Panola permitted its bus drivers to suspend a child from the bus for a maximum of one day. To suspend for any longer period, the bus driver was required to complete a form and forward that form to North Panola's transportation director (during 2004-05), Mr. Brown Walker, who issued longer suspensions. Walker apparently had been given unilateral authority to suspend children from North Panola's buses despite the district's official policy mandating that a school principal issue those suspensions.

The severity of the incidents varied. For example, Ms. Webster testified that in response to her complaints to him about the children's body odor, North Panola Superintendent Massey had told her to carry a can of air deodorizer on the bus and to use it after the children exited, which she thereafter did. David and Quanellia, however, testified that Ms. Webster herself, or other children at Ms. Webster's direction, sprayed the deodorizer while the three minor plaintiffs were on the bus, and on one occasion, another student sprayed the deodorizer directly on Quanellia. To be sure, Quanellia did not testify that she was doused with deodorizer – but indicated that the spray was

2

directed at her and wasn't merely collateral mist from spraying the bus's cabin generally.[2]

May 10, 2005 was a particularly eventful day. As on most mornings, the children attempted to enter the bus. Izear, Jr. was allowed to board; when David attempted to board, Ms. Webster informed David he was suspended from the bus. She told Quanellia that she could board if David would move out of the doorway. Webster subsequently closed the doors, trapping David's hand in the doors. As Ms. Webster drove off, she dragged David for a few feet before he freed his hand from the door. As neither David nor Quanellia was able to board the bus that morning, their father, Izear, Sr., took both children to school. After school that day the children tried to board the bus home. Quanellia had actually boarded and took a seat when Ms. Webster demanded that Quanellia leave the bus. Quanellia adamantly refused, insisting she had not done anything to warrant the current suspension. As district policy did not permit a bus driver to touch a child, Ms. Webster called the Como, Mississippi Police Department, which dispatched an officer who subsequently removed Quanellia by force and transported her to the Como Police Department. Quanellia was later picked up by her mother Joyce Turner's niece.

During these events, the parents, especially Joyce Turner, complained to the school district. When the suspensions first began, she addressed her complaints to the school principal who referred her to Brown Walker, the transportation director. Izear Farmer, Sr., likewise indicated that both the superintendent and principal referred Joyce and him to Walker. Walker testified that although there may have been others, he could only remember one meeting with Ms. Turner – one in which she

---

[2] Quanellia was not always suspended for the alleged body odor. In fact, she had also been suspended for disciplinary reasons. For example, Quanellia was suspended once for throwing an object at the back of Ms. Webster's head and for unruly, loud behavior on another occasion. Whatever Quanellia's bus decorum actually was, it does not mitigate Ms. Webster's conduct relating to the deodorizer incidents.

3

"helped him clear off his desk," in an apparent attempt to reach Walker, who had apparently snickered when Ms. Turner complained of Ms. Webster's conduct. Although her actions on that day were inexcusable, her motives – and attendant anger – are understandable. Ms. Turner had had a number of informal meetings with Walker, all of which failed to rectify the conditions and events on the bus.[3]

After the events of May 10, 2005, the superintendent interceded. On May 11, 2005, with about four days remaining in the school year, there was a meeting at his office, at which Ms. Turner, David, Quanellia, Superintendent Massey, Walker, and Ms. Webster were present. Ms. Glendora Dugger, an assistant superintendent, prepared minutes of the meeting. Ms. Webster explained that she had reported to Mr. Walker that "a child had a foul smell." Superintendent Massey ordered that the children's bus privileges be restored for the rest of the school year, that the school nurse visit the Turners to discuss personal hygiene, and that Ms. Webster "work with the parents through the remainder of the school year."

As a result of Ms. Webster's actions, and the resulting teasing and taunting from other school children, the Turner children suffered in various ways. The evidence establishes that Quanellia became depressed and suicidal; she reacted defensively in school and apparently developed mild paranoia, believing that the other children were always gossiping about her family's problems on the bus. David, an apparently quiet child by nature – who defendant's own witnesses acknowledged had never had any disciplinary problems at school or on the bus – became withdrawn, circumspect, and increasingly depressed. Izear Farmer, Sr. also testified that he lost his former employment in

---

[3] Mr. Walker had a standing presumption in favor of his bus drivers, whose stories he believed until someone brought sufficient evidence contradicting them. Consequently, he did not pursue any corrective measures concerning the Turners and their bus situation.

Memphis, Tennessee in part because he was forced to use the family's only car to take the children to school on numerous occasions when Ms. Webster suspended the children from the school bus. His new employment was for considerably less money, resulting in additional stress on the family.

Finally, it serves to underscore that the Turners never contested the body odor problems, especially that caused by David's severe athlete's foot. Due to their limited means, the Turners attempted to treat David with over-the-counter medications, *e.g.*, foot creams, powders and the like. His parents never took David to see a physician about the condition because of a lack of funds. By all accounts, the children bathed regularly and benefitted from clean clothes.

Consequently, the Turners brought the instant action against North Panola. As previously mentioned, the jury disposed of the federal constitutional claims, leaving the state law claims for the court's consideration under its supplemental jurisdiction. *See* 28 U.S.C. § 1367.

## II. ANALYSIS

The Mississippi Tort Claims Act ("the Act") waives sovereign immunity for the tortious acts of governmental entities and their employees during the scope of their employment. *See Pigford v. Jackson Pub. Sch. Dist.*, 910 So. 2d 575, 578 (Miss. Ct. App. 2005). Mississippi law is clear that school districts are governmental entities amenable to suit under the Act. *Id.* Therefore, the court must ensure that the Turners complied with the Act's procedural requirements before analyzing their claims.

### A. *Procedural Requirements*

The Act requires that potential litigants send a notice to the governmental entity's chief executive officer describing the circumstances of any potential claims at least ninety days prior to commencing suit. MISS. CODE ANN. § 11-46-11(1). The Turners sent their notice to Ms. Glendora

Memphis, Tennessee in part because he was forced to use the family's only car to take the children to school on numerous occasions when Ms. Webster suspended the children from the school bus. His new employment was for considerably less money, resulting in additional stress on the family.

Finally, it serves to underscore that the Turners never contested the body odor problems, especially that caused by David's severe athlete's foot. Due to their limited means, the Turners attempted to treat David with over-the-counter medications, *e.g.*, foot creams, powders and the like. His parents never took David to see a physician about the condition because of a lack of funds. By all accounts, the children bathed regularly and benefitted from clean clothes.

Consequently, the Turners brought the instant action against North Panola. As previously mentioned, the jury disposed of the federal constitutional claims, leaving the state law claims for the court's consideration under its supplemental jurisdiction. *See* 28 U.S.C. § 1367.

## II. ANALYSIS

The Mississippi Tort Claims Act ("the Act") waives sovereign immunity for the tortious acts of governmental entities and their employees during the scope of their employment. *See Pigford v. Jackson Pub. Sch. Dist.*, 910 So. 2d 575, 578 (Miss. Ct. App. 2005). Mississippi law is clear that school districts are governmental entities amenable to suit under the Act. *Id.* Therefore, the court must ensure that the Turners complied with the Act's procedural requirements before analyzing their claims.

### A. *Procedural Requirements*

The Act requires that potential litigants send a notice to the governmental entity's chief executive officer describing the circumstances of any potential claims at least ninety days prior to commencing suit. MISS. CODE ANN. § 11-46-11(1). The Turners sent their notice to Ms. Glendora

Dugger, interim superintendent of North Panola on January 19, 2006, and commenced this action on June 9, 2006. The court finds that the notice meets the requirements of § 11-46-11(1), as interpreted by the Mississippi Supreme Court. *See, e.g., Carr v. Town of Shubuta*, 733 So. 2d 261 (Miss. 1999).

### B. *Standard of Care*

The Mississippi Legislature did not waive the state's sovereign immunity unconditionally. Rather, the Act provides certain situations in which the state's sovereign immunity is not waived and, therefore, liability will not attach. As Mississippi case law reveals, oftentimes the success of a tort claims act claim hinges on the classification of the government's conduct at issue. *See, e.g., Pigford*, 910 So. 2d at 578-80; *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136 (Miss. 1999).

Here, there are two possible standards. First, there is a general, negligence standard that precludes liability when the government and its employees exercise "ordinary care." MISS. CODE ANN. § 11-46-9(1)(b). Second, there is a heightened standard arising out of any taken by a school official[4] "to maintain control and discipline of students," where liability will attach only if the school official "acted in bad faith or with malicious purpose or in a manner exhibiting a wanton and willful disregard of human rights or safety." *Id.* § 11-46-9(1)(x). Not surprisingly, liability will hinge on which standard the court applies in analyzing North Panola's actions.

Based on a review of Mississippi case law, the court will apply the general, negligence standard provided in Miss. Code Ann. § 11-46-9(1)(b). The court is aware of *Pigford v. Jackson*

---

[4] The Mississippi Code lists the school officials who may benefit from the heightened standard: "a teacher, assistant teacher, principal, or assistant principal of a public school district . . . ." MISS. CODE ANN. § 11-46-9(1)(x).

6

*Public School District*, 910 So. 2d 575 (Miss. Ct. App. 2005), where the Mississippi Court of Appeals held that a teacher's aide physically restraining an autistic child qualified for the heightened standard under § 11-46-9(1)(x). The court found that the teacher's aide's action, though not punitive, constituted "discipline" within the meaning of the statute. *See Pigford*, 910 So. 2d at 579 (defining "discipline" as "[c]ontrol gained by enforcing compliance").

*Pigford* is distinguishable for two reasons. First, Ms. Webster did not hold any of the positions listed in the statute as being protected by the heightened standard. Second, in suspending them for their body odor neither she nor any school official acted to gain control over or to discipline David and Quanellia, which one could characterize as a responsive measure. Rather, Ms. Webster acted *offensively and preemptively* based on her discomfort with the body odor, not as a result of any action from the Turner children. As such, the present situation is similar to *L.W. v. McComb Separate Municipal School District*, 754 So. 2d 1136 (Miss. 1999), where the Mississippi Supreme Court found that teachers' inaction in the face of one student's credible threats to another student was a failure "to perform the statutory duty of administering public schools," thereby implicating MISS. CODE ANN. § 11-46-9(1)(b)'s lower standard. *See L.W.*, 754 So. 2d at 1138-39.

Because North Panola's actions – at least those that subject it to liability here – were offensive and preemptive (*i.e.*, not responsive to any conduct by the Turners which required intervention to maintain control or discipline), the court finds that North Panola's actions constituted a failure to perform its statutory duty; thus, § 11-46-9(1)(b) applies, and the court will consider North Panola's action under a general, negligence standard.

### C. *Application of Negligence Standard to North Panola's Conduct*

The familiar elements of a negligence claim are: (1) duty, (2) breach of that duty, (3)

proximate cause, and (4) damages. *See, e.g., Rolison v. City of Meridian*, 691 So. 2d 440, 444 (Miss. 1997).

### 1. Duty

It is clear that school has a duty to provide a safe, school environment for students. *E.g., L.W.*, 754 So. 2d at 1143. Moreover, that duty, without question, covers their transportation to and from school. Moreover, MISS. CODE ANN. § 37-41-3 imposes a duty upon a school district to provide transportation to and from school if the student lives more than one mile from the school. The school district clearly owed this duty to David, Quanellia, and Izear Farmer, Jr. However, the court holds that the school district did not owe any such duty to either Joyce Turner or Izear Farmer, Sr. Indeed, the court is unable to locate any Mississippi case law establishing a duty of a school district to a parent under facts similar to this case.

### 2. Breach of Duty

Having established a duty, the court must next consider whether North Panola breached the duty it owed to the Turner children. In essence, the court must determine two things: (1) whether North Panola in fact committed the allegedly negligent acts; and, if so, (2) whether those acts constitute a breach of the duty owed.

The evidence presented at trial, as analyzed with due consideration to witness credibility and demeanor, convinces the court that North Panola, through its employees, did in fact commit the allegedly negligent acts. The testimony of David, Quanellia, and Joyce Turner, along with Izear Farmer, Sr. – all of which was largely consistent – was sufficient to show that Ms. Webster did often use the district's policy of administering one-day suspensions; that Ms. Webster herself sprayed, or permitted other students to spray, air deodorizer while David and Quanellia were on the bus and, on

8

one occasion, directly at Quanellia, even though Wesbster herself acknowledged that doing so would have been unnecessary and cruel; and that Ms. Webster did deny David entry on the bus on May 10, 2005 because of his body odor, and subsequently trapped his hand in the doors of the bus and began to drive away. Furthermore, the court finds that the school administrators, especially Walker, failed to investigate the situation adequately, especially in the face of a multitude of complaints from Ms. Turner; this failure extends to the district administration, which did not adequately supervise its employees and, thereby, deprived the students of a safe school environment. Indeed, the Turner children were deprived of the very ability to *attend* school on some occasions.

The court holds that these actions constitute a breach of North Panola's duty to provide a safe, school environment for the Turner children.

### 3. Proximate Cause

Under Mississippi law, proximate cause consists of two elements: (1) cause-in-fact and (2) legal cause. Cause-in-fact is analyzed under the familiar "but for" test – so familiar that it needs no citation to authority. As to legal cause, the Mississippi Supreme Court has offered this definition:

> The rule is firmly established in this state, as in nearly all the common law states, that in order that a person who does a particular act which results in injury to another shall be liable therefor, the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom.

*Mauney v. Gulf Refining Co.*, 9 So. 2d 780, 780-81 (Miss. 1942).

The court finds that North Panola's negligent acts were the cause-in-fact of the injuries to the Turner children. There is ample evidence to establish that both Quanellia's and David's injuries – including depression and Quanellia's suicidal ideation – were in fact the result of Ms. Webster's conduct in suspending their bus privileges arbitrarily, doing so in a fashion that drew attention to and

9

undeserved opprobrium for the afflictions the children suffered and invited the taunting and disdain of other students. Moreover, North Panola's failure to act, through Walker and school administrators, allowed *ipso facto* Ms. Webster to continue the suspensions and resulting public attention to the children's body odor.

The court finds that North Panola's negligence is the legal cause of the Turner children's injuries. North Panola reasonably could have anticipated that Ms. Webster's conduct would cause serious, adverse psychological effects on school children, especially, as acknowledged by Assistant Superintendent Dugger, vis-à-vis their peers. The same is true for the school administrators' inaction in responding to Ms. Turner's numerous complaints. Educators – whether veteran or new – could and should reasonably have anticipated the injuries the Turner children suffered as a result of North Panola's negligent acts.

### 4. Damages

Mississippi law is lenient on the level proof for damages when it is clear that the plaintiffs have suffered some damages. *See, e.g., Merritt v. Dueitt*, 455 So. 2d 792 (Miss. 1984). "Though the exact loss might be uncertain, as long as the damage is certain and the proof is sufficient to afford a reasonable basis to estimate the [the plaintiff's] loss, the jury properly could determine an award." *Purina Mills, Inc. v. Moak*, 575 So. 2d 993, 998 (Miss. 1990).

Based on the testimony at trial, the court finds that the Turners produced sufficient evidence to provide a reasonable basis for the court, as trier of fact, to estimate the damages suffered.

First, the Turner children testified as to David's and Quanellia's depression and Quanellia's suicidal ideation. Second, there is David's pain and suffering stemming from the arm-in-the-door incident. Third, there is the public humiliation and subsequent emotional distress suffered by David

and Quanellia as result of their various ordeals. Ultimately as to the damages, they "could not be all be shown by exact proof[,] and under the circumstances of this case some of these damages could only be a 'fair and reasonable' estimate." *Purina Mills*, 575 So. 2d at 998.

The court will award damages as follows below. Before quantifying the damages, the court points out that the evidence did not establish, by a preponderance of the evidence, that Izear Farmer, Jr., was ever subject to Ms. Webster's happenstance suspensions or, for that matter, that he himself had offensive body odor. As such, the court finds that Izear Farmer, Jr. has not met his individual burden and awards him nothing. As to Joyce Turner, even if she had met her burden on the other elements of her negligence claim, the court holds that she did not prove damages recoverable under Mississippi law. Hurt feelings, maternal empathy, and the like are not in themselves recoverable.

Based on the foregoing, the court awards the Turners damages as follows:

(A)  David Turner       ......  $  25,000.00
(B)  Quanellia Turner   ......  $  25,000.00
(C)  Izear Farmer, Jr.  ......  $       0.00
(D)  Joyce Turner       ......  $       0.00
(E)  Izear Farmer, Sr.  ......  $       0.00

### III. CONCLUSION

The Court, as trier of fact, on the Turners' various state law claims, finds for the plaintiffs, as described above, on their negligence cause of action and awards damages in the amounts specified above. A separate order conforming to this memorandum opinion shall issue this day.